JAMES A. DiBOISE
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
One Market Street
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: jdiboise@wsgr.com

JOSHUA A. PLAUT
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: jplaut@wsgr.com

*Attorneys for Defendant/Counterclaim-Plaintiff
Actuate Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITIGROUP GLOBAL MARKETS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ACTUATE CORPORATION, <br><br> Defendant. <br><br> —————————————————— <br><br> ACTUATE CORPORATION, <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> CITIGROUP GLOBAL MARKETS, INC., <br><br> Counterclaim-Defendant. | ECF CASE <br><br> Case No. 1:09-cv-06786-LMM <br><br> **ANSWER AND COUNTERCLAIM** |

## ANSWER

Defendant/Counterclaim-Plaintiff Actuate Corporation ("Actuate"), by and through its undersigned counsel, answers the Complaint of Plaintiff/Counterclaim-Defendant Citigroup Global Markets, Inc. ("CGMI") as follows:

### Nature of the Action

1.      Actuate denies the allegations set forth in Paragraph 1.

### Parties

2.      Actuate denies that is has knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2, and it therefore denies them.

3.      Actuate admits the allegations set forth in Paragraph 3.

4.      Paragraph 4 contains legal conclusions to which Actuate is not obligated to respond.  Actuate otherwise denies the allegations set forth in Paragraph 4.

5.      Paragraph 5 contains legal conclusions to which Actuate is not obligated to respond.

### Factual Background

6.      Actuate denies that is has knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6, and it therefore denies them.

7.      Actuate admits that it develops computer software and sells licenses to that software, almost exclusively to large "enterprise" businesses (including financial institutions).  Actuate admits that it licenses a complete suite of Business Intelligence and Reporting products that provide interactive web reports, brochure-quality reporting, business analytics, and spreadsheet reporting to licensees.  Actuate further admits that it licenses a group of software products that it has referred to as the "iServer e.Report

Package w/ Query and Multi-Application Options." Actuate further admits that it licenses a software product called Actuate iServer Base, which is a scalable, world-class server software for generating, managing and securely delivering interactive, actionable business information to a licensee's employees, customers and partners. Actuate further admits that it licenses a number of separate software options that can be added onto Actuate iServer Base and that such software options include (without limitation) the e.Report Option, the e.Spreadsheet Option, the Page Level Security Option, the Query Option, and the Multi-Application Option. Actuate further admits: (1) that the e.Report Option enables licensees to create structured content by extracting data from various data sources, facilitating transformations required on that data and producing structured reports in various formats; and (2) that the formatted reports thus generated can be viewed online or printed as PDF files, and can be accessed by licensed recipients. Actuate further admits that the e.Spreadsheet Option provides a licensee with server-controlled Excel spreadsheet management throughout their enterprise as well as their extended network of licensed suppliers, distributors, and customers. Actuate further admits: (1) that the Page Level Security Option is a patented technology for accessing personalized report content without burdening the system with excess documents, queries or IT interference; and (2) that the Page Level Security Option generates a single-server document that includes security rules for each licensed recipient. Actuate otherwise denies the allegations set forth in Paragraph 7.[1]

8. Actuate admits it entered into a Master Perpetual License Agreement (the "Master Agreement") with Salomon Smith Barney Inc. ("SSBI"). The Master

---

[1] The software products licensed pursuant to Actuate's agreements with CGMI—including Actuate iServer Base, the e.Report Option, the e.Spreadsheet Option and the Page Level Security Option—are referred to collectively in this Answer and Counterclaims as the "Actuate Software."

Agreement is a written document that speaks for itself, and Actuate therefore denies the allegations set forth in Paragraph 8 to the extent that they attempt to characterize the Master Agreement. Actuate denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations that SSBI is now known as CGMI or that CGMI has any rights under the Master Agreement, and it therefore denies them. Actuate otherwise denies the allegations set forth in Paragraph 8.

9. Actuate admits that pursuant to the Master Agreement, Actuate and CGMI entered into Schedule Number AAY98L-010, dated July 18, 2003 (the "2003 Schedule"). The 2003 Schedule is a written document that speaks for itself, and Actuate therefore denies the allegations set forth in Paragraph 9 to the extent that they attempt to characterize the 2003 Schedule. Actuate otherwise denies the allegations set forth in Paragraph 9.

10. Actuate admits that Exhibit A of the 2003 Schedule imposes stringent monitoring and reporting obligations on CGMI designed to detect and prevent unlicensed usage of Actuate's software. Exhibit A to the 2003 Schedule is a written document that speaks for itself, and Actuate therefore denies the allegations set forth in Paragraph 10 to the extent that they attempt to characterize Exhibit A to the 2003 Schedule. Actuate otherwise denies the allegations set forth in Paragraph 10.

11. Actuate admits that CGMI has failed to provide quarterly reports and otherwise failed to fulfill its monitoring and reporting obligations pursuant to Exhibit A of the 2003 Schedule. Actuate otherwise denies the allegations set forth in Paragraph 11.

12. Actuate admits that pursuant to the Master Agreement, Actuate and CGMI entered into Schedule Number AAY98L-015, dated July 15, 2005 (the "2005 Schedule").

The 2005 Schedule is a written document that speaks for itself, and Actuate therefore denies the allegations set forth in Paragraph 12 to the extent that they attempt to characterize the 2005 Schedule. Actuate otherwise denies the allegations set forth in Paragraph 12.

13.     Actuate admits that it has demanded that CGMI pay at least $9,064,345 in connection with CGMI's unlicensed use of the e.Spreadsheet Option and the Page Level Security Option and other breaches of the Master Agreement, the 2003 Schedule (including Exhibit A thereto) and the 2005 Schedule. Actuate otherwise denies the allegations set forth in Paragraph 13.

14.     Actuate admits that it in 2008, it migrated all of its customers from version 8 to version 9 of the Actuate Software. Actuate admits that version 9 of the Actuate Software includes license key information that must match information associated with a particular server. Actuate otherwise denies the allegations set forth in Paragraph 14. Further, Actuate avers that CGMI had the option to continue running version 8 of the Actuate Software without the need to input any specific server information at all times relevant to CGMI's Complaint.

15.     Actuate admits that Paragraph 15 accurately quotes Section 9.7 of the Master Agreement. Actuate otherwise denies the allegations set forth in Paragraph 15. The Master Agreement is a written document that speaks for itself, and Actuate therefore denies the allegations set forth in Paragraph 15 to the extent that they attempt to characterize Section 9.7 of the Master Agreement. Actuate otherwise denies the allegations set forth in Paragraph 15.

16.     Actuate denies the allegations set forth in Paragraph 16.

17.     Actuate admits that CGMI seeks declaratory relief along the lines described in Paragraph 17.  Actuate otherwise denies the allegations set forth in Paragraph 17.

**FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

18.     Actuate incorporates its responses to Paragraphs 1-17 above.

19.     Paragraph 19 contains legal conclusions to which Actuate is not obligated to respond.  Actuate otherwise denies the allegations set forth in Paragraph 19.

20.     Paragraph 20 contains legal conclusions to which Actuate is not obligated to respond.  Actuate otherwise denies the allegations set forth in Paragraph 20.

21.     Paragraph 21 contains legal conclusions to which Actuate is not obligated to respond.  Actuate otherwise denies the allegations set forth in Paragraph 21.

22.     Actuate admits that license key files (that include license key information that must match information associated with a licensee's server(s)) are a standard component of version 9 of the software products that it licenses, including the Actuate Software. Actuate otherwise denies the allegations set forth in Paragraph 22.

23.     Actuate denies the allegations set forth in Paragraph 23.

24.     Actuate denies the allegations set forth in Paragraph 24.

25.     Actuate denies the allegations set forth in Paragraph 25.

**SECOND CAUSE OF ACTION FOR DECLARATORY JUDGMENT**

26.     Actuate incorporates its responses to Paragraphs 1-25 above.

27.     Actuate admits that CGMI owes Actuate at least $9,064,345 in connection with CGMI's unlicensed use of the e.Spreadsheet Option and the Page Level Security Option and other breaches of the Master Agreement, the 2003 Schedule (including

Exhibit A thereto), and the 2005 Schedule. Actuate otherwise denies the allegations set forth in Paragraph 27.

28.     Actuate admits that it holds valid claims against CGMI for breach of contract and copyright infringement. Actuate otherwise denies the allegations set forth in Paragraph 28.

29.     Actuate admits that CGMI seeks declaratory relief along the lines described in Paragraph 29. Paragraph 29 contains legal conclusions to which Actuate is not obligated to respond. Actuate otherwise denies the allegations set forth in Paragraph 29.

30.     Actuate denies the allegations set forth in Paragraph 30.

31.     Actuate denies the allegations set forth in Paragraph 31.

32.     Actuate denies the allegations set forth in Paragraph 32.

33.     Actuate denies the allegations set forth in Paragraph 33.

34.     Actuate denies the allegations set forth in Paragraph 34.

35.     Paragraph 35 contains legal conclusions to which Actuate is not obligated to respond. Actuate otherwise denies the allegations set forth in Paragraph 35.

36.     Paragraph 36 contains legal conclusions to which Actuate is not obligated to respond. Actuate otherwise denies the allegations set forth in Paragraph 36.

## DEMAND FOR JUDGMENT

Actuate denies that CGMI is entitled to any of the relief requested in Paragraphs A through F.

## DEFENSES

By way of further answer and defense to the Complaint, and without assuming the burden of proof of such defenses that would otherwise rest on CGMI, Actuate alleges as follows:

## FIRST DEFENSE

CGMI's claims are barred or limited, in whole or in part, because it has failed to state claims upon which the relief sought could be granted.

## SECOND DEFENSE

CGMI's claims are barred or limited, in whole or in part, because any injury that it has sustained is the result of its own conduct. CGMI has not suffered, and will not suffer, any injury to a legally protected or cognizable interest by reason of any conduct of Actuate alleged in the Complaint.

## THIRD DEFENSE

CGMI's claims are barred or limited, in whole or in part, by the doctrines of equitable estoppel, waiver, ratification, laches and unclean hands and other related doctrines and principles, or any one of them, and by CGMI's inequitable conduct, lack of diligence, delay and inattention in pursuing such claims.

## FOURTH DEFENSE

CGMI's claims are barred or limited, in whole or in part, by the doctrines of accord and satisfaction.

## FIFTH DEFENSE

CGMI's claims are barred or limited, in whole or in part, because CGMI has released Actuate.

## SIXTH DEFENSE

CGMI's claims are barred or limited, in whole or in part, because CGMI has failed to comply with a condition precedent or condition subsequent under the Master Agreement, the 2003 Schedule, and/or the 2005 Schedule.

## SEVENTH DEFENSE

CGMI's claims are barred, in whole or in part, because CGMI has failed to allege the existence of any actual, justiciable controversy between the parties.

## EIGHTH DEFENSE

Actuate hereby gives notice that it intends to rely upon any other and additional defenses that is now or may become available or appear during, or as a result of, any discovery proceedings in this action, and hereby reserves its right to amend its answer to assert any such defenses.

WHEREFORE, Actuate respectfully requests that the Court enter an Order:

(a) That CGMI takes nothing by way of its Complaint;

(b) Entering judgment in favor of Actuate and against CGMI, and dismissing CGMI's action in its entirety with prejudice;

(c) Awarding Actuate the cost of defending this lawsuit, including reasonable attorneys' fees; and

(d) Awarding Actuate such other and further relief as the Court deems just and proper.

## COUNTERCLAIM

Defendant/Counterclaim-Plaintiff Actuate Corporation ("Actuate"), in support of its Counterclaim against Plaintiff/Counterclaim-Defendant Citigroup Global Markets, Inc. ("CGMI"), alleges as follows:

## NATURE OF THE COUNTERCLAIM

1.      CGMI has violated the terms of the Master Agreement and the 2003 and 2005 Schedules by installing and running two Actuate software products—the e.Spreadsheet Option and the Page Level Security Option—on a greater number of central processing units ("CPUs") than is permitted pursuant to the licenses held by CGMI for those software products.

2.      To disguise its blatant copyright infringement and contractual breach, CGMI has failed to comply with reporting and monitoring requirements specifically designed to protect Actuate from the exact conduct that CGMI has engaged in here—unlicensed use of the Actuate Software.  This conduct on the part of CGMI is a material breach of the Master Agreement and the 2003 and 2005 Schedules, and it has caused Actuate very significant damages.  By virtue of the paragraphs pleaded herein, Actuate seeks relief including:  (1) damages of at least $9,064,345 plus interest; (2) a declaration that the Master Agreement and all Schedules thereto are immediately terminated based on CGMI's material breach; (3) injunctive relief requiring CGMI to immediately cease its use of the Actuate Software; and (4) attorneys' fees and other costs.

**PARTIES**

3.     Actuate is a corporation incorporated in the State of Delaware with its

principal place of business at 2207 Bridgepoint Parkway, Suite 500, San Mateo,

California.

4.     Actuate is informed and believes that CGMI is a corporation that is, and at all

relevant times has been, incorporated in the State of New York with its principal place of

business at 338 Greenwich Street, New York, New York.

**JURISDICTION & VENUE**

5.     This Court has subject matter jurisdiction over this Counterclaim pursuant to

28 U.S.C. §§ 1331 and 1367.  Actuate's copyright infringement claim presents a federal

question and its breach of contract claim is part of the same case and controversy.

Jurisdiction would also be proper pursuant to 28 U.S.C. § 1332, as the citizenship of the

parties is completely diverse and the amount in controversy, exclusive of interest and

costs, exceeds $75,000.

6.     Venue is proper under 28 U.S.C. §§ 1391(a)(1), (2).

**GENERAL ALLEGATIONS**

7.     Actuate develops computer software and sells licenses to that software, almost

exclusively to large "enterprise" businesses.

8.     Actuate provides a complete suite of Business Intelligence and Reporting

products that provide interactive web reports, brochure-quality reporting, business

analytics, and spreadsheet reporting.

9.     Actuate holds all right, title and interest in federally registered United States

copyrights covering version 8 and version 9.0 (and earlier versions thereof) of the

Actuate Software, including the following copyrights: TX0006863869; TX0006862885; TX0006862880; TX0006862866; TX0006348889; TX0006348888; TX0006348887; TX0006348886; TX0006348885; TX0006348884; TX0006348883; TX0006348882; TX0006348881; TX0006348880; TX0006348879; TX0006348878; TX0006348877; TX0006348876; TX0006348875; TX0006348874; TX0006348873; TX0006348872; TX0006348871; and TX0006348870.

10.     Actuate iServer Base, the e.Reports Option, the e.Spreadsheet Option and the Page Level Security Option are covered by Actuate's aforementioned copyrights.

11.     Actuate iServer Base is a scalable, world-class server software for generating, managing, and securely delivering interactive, actionable business information to a licensee's licensed employees, customers and partners.

12.     The e.Report Option is a software option that can be added onto Actuate iServer Base. It enables licensees to create structured content by extracting data from various data sources, facilitating transformations required on that data and producing structured reports in various formats. The formatted reports generated by the e.Report Option can be viewed online or printed as PDF files, and can be accessed by licensed recipients.

13.     The e.Spreadsheet Option is a software option that can be added onto Actuate iServer Base. It provides server-controlled Excel spreadsheet management throughout a licensee's enterprise as well as to the licensee's extended network of licensed recipients (e.g., suppliers, distributors, customers, etc.).

14.     The Page Level Security Option is a software option that can be added onto Actuate iServer Base. It is a patented technology for accessing personalized report

content without burdening the system with excess documents, queries or IT interference. The Page Level Security Option generates a single-server document that includes security rules for each licensed recipient.

15.     Pursuant to a Master Perpetual License Agreement (the "Master Agreement") and the subsequently executed schedules thereto, CGMI has licensed the Actuate Software since 1999.

16.     Pursuant to the Master Agreement, Actuate and CGMI entered into Schedule Number AAY98L-010, dated July 18, 2003 (the "2003 Schedule"). The 2003 Schedule licensed the "iServer e.Report Package w/ Query and Multi-Application Options" for 32 CGMI CPUs, the e.Spreadsheet Option for 12 CGMI CPUs and the Page Level Security Option for 8 CGMI CPUs.

17.     Exhibit A of the 2003 Schedule provides, in relevant part, as follows:

> **CPU Utilization**: [CGMI] acknowledges that [Actuate]'s licensing policy requires that all CPUs on a server or cluster of servers on which [Actuate] server software is installed must be licensed. Notwithstanding [Actuate]'s licensing policy, pursuant to the terms and conditions below, [Actuate] will permit [CGMI] to install [Actuate]'s Server Options (not including the Citi CPU), on a multiprocessor server cluster configuration that contains more CPUs than [Actuate] has licensed.
>
> The conditions under which [Actuate] will permit such use are as follows:
>
> A. Using third party software designed to monitor software CPU usage on a server(s) (such as TeamQuest), [CGMI] will provide [Actuate] a quarterly report, for the server system/cluster on which the [Actuate] Server Options licensed hereunder is installed, that will contain the following information:
>
>   - Project name
>   - Host name for each machine
>   - IP address
>   - Operating system and version
>   - Total CPUs in system/cluster

- For each Server Option, the name of each application in the system/cluster.
- CPU usage of each application in the system/cluster (reports to be run at 10 to 15 minute intervals that identify the CPU usage).

Quarterly reports are due to [Actuate] within 30 days following each Calendar quarter.

* * *

C. [CGMI] and [Actuate] agree that if i) the reports for a particular machine show that the monitoring software was not running reports in 10 to 15 minute intervals, or ii) the reports for a particular machine are not delivered by the 30th day following the Calendar quarter, [CGMI] agrees that [Actuate] can invoice [CGMI] for the applicable license fees and maintenance fees for all the CPUs on the system/cluster that have not been previously licensed by [CGMI] and [CGMI] will pay such invoices within 45 days of receipt of such invoices.

18.     As set forth above, Actuate agreed in Exhibit A to the 2003 Schedule to diverge from its standard licensing policy in connection with the 2003 Schedule.  That is, Actuate agreed to permit CGMI to install the e.Spreadsheet and Page Level Security Options on a server cluster that contained CPUs in excess of the 12 CGMI CPUs that had been licensed for the e.Spreadsheet Option and the 8 CGMI CPUs that had been licensed for the Page Level Security Option.

19.     As set forth in Exhibit A, Actuate's agreement to diverge from its standard licensing policy was expressly conditioned on:  (1) CGMI's use of specified third-party software to monitor usage of the Actuate Software by CGMI CPUs; and (2) CGMI's provision of quarterly reports for the server cluster on which the e.Spreadsheet and Page Level Security Options were installed.  Actuate insisted on these monitoring and reporting requirements to guard against CGMI's unlicensed use of the Actuate Software.

20.     Pursuant to Exhibit A, CGMI agreed that if it failed to strictly comply with its monitoring and reporting obligations, it would pay Actuate the license and maintenance fees associated with the e.Spreadsheet and Page Level Security Options for *all* of the CGMI CPUs in the cluster and not merely those that had been initially licensed for the e.Spreadsheet and Page Level Security Options pursuant to the 2003 Schedule.

21.     Pursuant to the Master Agreement, Actuate and CGMI entered into Schedule Number AAY98L-015, dated July 15, 2005 (the "2005 Schedule").

22.     Pursuant to the 2005 Schedule, Actuate licensed to CGMI "iServer Base w/ e.Report, Query and Multi-Application Option" for an additional 12 CGMI CPUs.

23.     The e.Spreadsheet and Page Level Security Options were not among the software products licensed for each of the 12 additional CGMI CPUs pursuant to the 2005 Schedule.

24.     In 2008, Actuate learned that CGMI was running the e.Spreadsheet and Page Level Security Options on all 44 CPUs that had been licensed for the "iServer e.Report Package w/ Query and Multi-Application Options" pursuant to the 2003 and 2005 Schedules.

25.     Thereafter, Actuate attempted to collect license and maintenance fees from CGMI for the 32 unlicensed CGMI CPUs that were running the e.Spreadsheet Option and the 36 unlicensed CGMI CPUs that were running the Page Level Security Option.  CGMI has refused to remit any such fees.

26.     In connection with its unlicensed use of the e.Spreadsheet and Page Level Security Options, CGMI has permanently installed test copies of the e.Spreadsheet and

Page Level Security Options that were provided to it by Actuate in 2008 when Actuate was migrating CGMI from version 8 to version 9 of the Actuate Software.

27.     License keys have long been a standard feature of all Actuate software products, including versions 8 and 9 of the Actuate Software.  However, version 9 of the Actuate Software, unlike version 8, is "node locked."  That is, version 9 of the Actuate Software includes license key information that must match information associated with a particular server.  When a node-locked Actuate software product is first licensed, Actuate gives the licensee an initial license key that works for 30 days. The licensee installs the initial license key, and then Actuate's software collects information about the server on which the software is installed.  Then, Actuate issues a permanent key (that works forever) on the particular hardware on which the software is installed.

28.     CGMI does not need license keys to continue to run version 8 of the Actuate Software on *any* CGMI CPUs—including those CGMI CPUs that are not licensed to run the e.Spreadsheet and Page Level Security Options.  So as to avoid interruption of CGMI's applications, in 2009, Actuate issued CGMI perpetual license keys for version 9 of the Actuate Software even though CGMI was then in breach of the Master Agreement, the 2003 Schedule, and the 2005 Schedule.  In connection with the issuance of these perpetual keys, Actuate duly notified CGMI that Actuate was expressly reserving all of its rights and remedies under the Master Agreement, the 2003 Schedule, and the 2005 Schedule.  Under the Master Agreement and the 2003 and 2005 Schedules, CGMI owes Actuate compensation for its unlicensed use of the e.Spreadsheet Option and the Page Level Security Option.

29.    Actuate has also informed CGMI that it is otherwise in violation of the Master Agreement, the 2003 Schedule (including Exhibit A thereto), and the 2005 Schedule.  In particular, Actuate has informed CGMI that it is entitled to license and maintenance fees based on CGMI's failure to comply with the monitoring and reporting obligations imposed by Exhibit A of the 2003 Schedule.

## FIRST CAUSE OF ACTION
(Breach of Contract)

30.    Actuate realleges and incorporates by reference Paragraphs 1 through 29 above as though fully set forth herein.

31.    The Master Agreement, the 2003 Schedule, and the 2005 Schedule constitute a writing to which Actuate and CGMI were parties and through which Actuate provided CGMI a limited license to use the Actuate Software.

32.    Actuate has fulfilled all of its obligations under the Master Agreement, the 2003 Schedule, and the 2005 Schedule that were not excused by CGMI's actions.

33.    One of the limitations contained in the Master Agreement, the 2003 Schedule, and the 2005 Schedule is that CGMI is not permitted to install the e.Spreadsheet Option on more than 12 CGMI CPUs and the Page Level Security Option on more than 8 CGMI CPUs without first acquiring additional licenses from Actuate.

34.    Actuate is informed and believes that CGMI has installed both the e.Spreadsheet and Page Level Security Options on some 44 CGMI CPUs.

35.    CGMI has also failed to perform its monitoring and reporting obligations under Exhibit A to the 2003 Schedule.

36.    Based on all of the foregoing, Actuate has been harmed by CGMI's breach of the Master Agreement, the 2003 Schedule (including Exhibit A thereto), and the 2005

Schedule, and it is entitled to both injunctive relief and monetary damages in an amount to be determined at trial, but not less than $9,064,345 exclusive of interest, attorneys' fees and costs.

## SECOND CAUSE OF ACTION
(Copyright Infringement)

37.     Actuate realleges and incorporates by reference Paragraphs 1 through 36 above as though fully set forth herein.

38.     Actuate owns valid and enforceable U.S. copyrights covering the Actuate Software.

39.     Actuate is informed and believes that CGMI, its employees and its agents copied and/or used copies of the Actuate Software in violation of the Master Agreement, the 2003 Schedule, and the 2005 Schedule.

40.     CGMI's unlicensed use and copying of the Actuate Software constitutes infringement of Actuate's registered copyrights covering the Actuate Software pursuant to 17 U.S.C. § 106.

41.     Actuate is informed and believes that CGMI's past and ongoing infringement was knowing and willful.

42.     In light of CGMI's ongoing knowing and willful infringement of Actuate's copyrights, Actuate is entitled to injunctive relief pursuant to 17 U.S.C. § 502 as well as its actual damages suffered as a result of the infringement and any profits of CGMI that are attributable to the infringement and not taken into account in computing actual damages, pursuant to 17 U.S.C. § 504.  The amount of damages to which Actuate is entitled is to be determined at trial, but is not less than $9,064,345.

## DEMAND FOR JUDGMENT

WHEREFORE, Actuate prays for judgment against CGMI as follows:

A.     An injunction barring Actuate from accessing or providing access to the Actuate Software;

B.     A declaration that CGMI's conduct constituted a material breach that terminated the Master Agreement and that Actuate has no further obligation under Section 9.7 of the Agreement;

C.     Actual damages of not less than $9,064,345, including a disgorgement of CGMI's profits from its infringement and interest;

D.     Costs of suit and attorneys' fees, pursuant to 17 U.S.C. § 505; and

E.     Such other relief as may be deemed just.

## JURY DEMAND

Actuate hereby demands a trial by jury on all issues and claims so triable.


Dated:  November 2, 2009

WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION


By:  ____/s/ Joshua A. Plaut_____

     James A. DiBoise*
     One Market Street
     Spear Tower, Suite 3300
     San Francisco, CA 94105
     Telephone:  (415) 947-2000
     Facsimile:  (415) 947-2099
     Email:  jdiboise@wsgr.com

     Joshua A. Plaut
     1301 Avenue of the Americas, 40th Floor
     New York, NY 10019
     Telephone:  (212) 999-5800
     Facsimile:  (212) 999-5899
     Email:  jplaut@wsgr.com


     *admitted pro hac vice

     *Attorneys for Defendant / Counterclaim-Plaintiff
     Actuate Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November 2009, I caused service to be made of a true and correct copy of the foregoing Answer and Counterclaim via ECF upon the following counsel, who are counsel of record for Plaintiff/Counterclaim-Defendant Citigroup Global Markets, Inc. in connection with this action:

**Kramer Levin Naftalis & Frankel, LLP**

Marshall Howard Fishman
(mfishman@kramerlevin.com)

Jennifer Alyn Haber
(haber@kramerlevin.com)

Randy Lipsitz
(rlipsitz@kramerlevin.com)

By: /s/ Joshua A. Plaut
    Joshua A. Plaut